Charese A. Rohny, OSB No. 953964
charese@rohnylaw.com
**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon 97201
Telephone: 503.449.2291
Facsimile: 503.248.9533
Of Attorneys for Plaintiff

Jason Kafoury, OSB 091200
jkafoury@kafourymcdougal.com
**Kafoury and McDougal**
320 SW Stark Street, Suite # 202,
Portland, Oregon 97204
Telephone: 503.224.2647
Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **DOUG JUSTUS**<br><br>          Plaintiff,<br><br>     v.<br><br>**CITY OF PORTLAND**.<br><br>          Defendants. | Case No.  3:12-cv-00068-MO<br><br>**SECOND AMENDED COMPLAINT**<br><br>(ORS 659A.199 Retaliation, ORS 659A.203 Retaliation, ORS 659A.230 Retaliation; Wrongful Discharge)<br><br>**JURY TRIAL REQUESTED**<br><br>**(Not subject to mandatory arbitration)** |

### NATURE OF THE CASE

1.

This is an action pursuant to ORS 659A.203, ORS 659A.230, and common law to compensate plaintiff for damages, including mental anguish and distress, humiliation, loss of public esteem, respect, good will and confidence for defendants' deprivation of plaintiff's property interest, liberty interest and loss of reputation in the community.  Plaintiff, former

Page 1 – **SECOND AMENDED COMPLAINT**

Portland Police Sergeant Doug Justus, who at relevant times throughout this matter worked in the Vice Unit on human and child sex trafficking cases was a 25 year officer with the Portland Police Bureau.  Among other violations described herein, plaintiff was retaliated against for exercising his right to free speech protected by the First Amendment of the U.S. Constitution. Plaintiff spoke out on matters of public concern and engaged in whistleblowing regarding the City's misuse of power, misuse of resources, negligence and/or misfeasance regarding human and child sex trafficking cases, unlawful activity and matters of public safety.

2.

Plaintiff's speech and whistleblowing activities involved herein include (a) speaking to the public and to journalist Dan Rather on the weekly news show *Dan Rather Reports* about the extent of the human and child sex trafficking and child prostitution crimes in Portland and the fact that Portland had only two other vice officers on those cases (compared to approximately 50 vice officers for drug crimes); (b) when testifying against the City in an arbitration regarding unpaid overtime issues in which the City was found to be liable; (c) when speaking on several occasions with an investigative journalist and director from *America's Most Wanted,* a television show which is produced to assist law enforcement in the apprehension of fugitives and to assist in finding missing children. When *America's Most Wanted* sought out plaintiff on a matter involving a missing child who testified against her former pimp, plaintiff spoke out and stated how the case involving the missing child had fallen through the cracks at the agency handling it and involved failures in communication.  And, finally, (d) plaintiff spoke out by reporting and opposing the retaliation, including bringing a union grievance for one retaliatory act which included reduction in hazard pay, a grievance on which he prevailed.  Plaintiff's speech and whistleblowing on matters of public safety, occurring over the eight month period, lead to

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

unbearable working conditions, a continuing pattern of harassment by defendants, a continuing pattern of retaliation including but not limited to demotions, reduction in pay, transfers all of which resulted in defendants eventually forcing plaintiff to resign on January 13, 2011, thereby constructively terminating him from a 25 year career serving the Portland Police Bureau.

3.

Plaintiff seeks to be made whole pursuant to his claims under ORS 659A.203, ORS 659A.230, ORS 659A.199, as well as common law claims and seeks compensation for damages, including mental anguish and distress, past and future medical expenses, humiliation, loss of public esteem, respect, good will and confidence, loss of past and future wages, and loss of benefits, including a loss of a higher monthly retirement benefits due to the retaliatory demotion. This is also an action to vindicate plaintiff's rights and the rights of other employees to work in environments free from retaliation for whistleblowing and to make plaintiff whole.  Plaintiff also seeks injunctive relief.

**JURISDICTION AND VENUE**

4.

The relevant facts and employment practices alleged herein were committed in Multnomah County, Oregon.

5.

Plaintiff has satisfied all administrative requisites before filing this lawsuit.  Plaintiff sent the necessary notice of tort claims within 180 days of the tortious conduct described herein.

/////

Page 3 – **SECOND AMENDED COMPLAINT**

## PARTIES

### 6.

Plaintiff **Doug Justus** is a resident and citizen of the City of Ridgefield, Washington. At all material times plaintiff was employed by the City of Portland in the Police Bureau.

### 7.

At all material times the defendant **City of Portland** was and is a municipal corporation operating under the laws of Oregon, and was plaintiff's employer.

## FACTUAL ALLEGATIONS

### 8.

At all material times, Portland Police Bureau Chief Mike Reese was and is a management employee of the City of Portland and a resident of Oregon. At all material times, from May 12, 2010, to present, Chief Reese had final authority regarding policies, procedures, practices, customs, and personnel decisions, and final authority to make, ratify, approve, or disapprove decision-making of lower management in the Portland Police Bureau.

### 9.

At all material times, Assistant Chief Eric Hendricks was and is an employee of the City of Portland and a resident of Oregon. At all material times, Hendricks had managerial authority to act on behalf of the City. Hendricks was a Captain in the traffic division until the retirement

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

of Assistant Chief John Eckhart on July 2, 2010, at which time Chief Reese appointed Hendricks

to replace Eckhart as Assistant Chief.

10.

At all material times, Lieutenant Rachel Andrew was and is an employee of the City of

Portland and is a resident of City of Ridgefield, Washington.  At all material times, Andrew had

managerial authority to act on behalf of the City.

11.

Plaintiff was hired by the Portland Police Bureau on or about July 4, 1986.  Over the

course of his 25 year career with the Bureau, plaintiff served four years as a patrolman, four

years as a gang enforcement officer, six years as a detective, and eleven years as a sergeant.  In

2007 plaintiff joined the Drug and Vice Division and established himself as a passionate

investigator of human and child sex trafficking cases and a staunch advocate of the role of his

work within the larger Bureau.

12.

Over the course of his career, plaintiff performed his job satisfactorily and received over

50 commendations and six awards, including Officer of the Year, as well as countless letters

from citizens and victims whose lives he positively impacted.  Prior to working for the City of

Portland, he also had over five years of experience as a police officer with the City of Beaverton.

/////

/////

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

13.

In or around June 2007, plaintiff began working as a Sergeant in the Vice Division

handling vice detail involving human and sex trafficking and prostitution cases for the Portland

Police Bureau.

14.

In March 2010, *Dan Rather Reports*, a weekly news show, started filming the Portland

Vice Unit as it related to cases involving human and child sex trafficking.  As a Vice Sergeant,

plaintiff was included in the filming.  The producer received prior permission from the Bureau's

Public Information Officer to film.

15.

On or about April 2010, *Dan Rather Reports* interviewed plaintiff regarding matters of

human and child trafficking.  During Dan Rather's interview of plaintiff, management personnel

such as plaintiff's commander, and several other captains and lieutenants were in the room

observing what plaintiff said.  The interview took approximately three hours, during which

plaintiff spoke out on (a) the magnitude of human and sex trafficking crimes in Portland,

Oregon, (b) the extent to which the problem posed an immediate danger to public safety, (c)

misuse or resources in connection with the prevention of related crimes, and (d) improper and

insufficient allocation of resources by the City.  During the interview, Commander Mike Crebs

stated, in response to the things that plaintiff was discussing, "I'm going to get you for this."

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

After the interview, Commander Crebs continued to show anger toward plaintiff, yelling at him, and accusing him of saying things that would need to be edited out of the film.

16.

Following the interview, Dan Rather asked plaintiff to take him and the film crew around Portland specifically to show them strip clubs.  Lt. Mike Marshman then came to plaintiff and stated that (now former, retired) Asst. Chief John Eckhardt insisted that Marshman chaperone plaintiff because the Eckhardt feared plaintiff would "embarrass the City" of Portland. Marshman said he did not want to do it, but he was following orders.  Plaintiff responded it was degrading, and resisted the chaperoning.  After a short time passed, Commander Crebs called plaintiff on Lt. Marshman's phone and stated, "**you can go on your own but if you embarrass the City, you will be in big trouble.**"

17.

In May 2010, plaintiff spoke out in his capacity as a union representative regarding elimination of "on-call" pay which he and two other Sergeants split between them.  At a meeting in front of 40 detectives and sergeants, in his capacity as the union representative for detectives and sergeants, plaintiff asked Asst. Chief Eckhardt about the reduction in pay and management's business reasons for that reduction in pay.  Later the same day as the roll call meeting, plaintiff was asked to meet with Commander Crebs.  During this meeting, Crebs accused plaintiff of embarrassing Eckhardt by inquiring about the on-call pay decision.

/////

Page 7 – **SECOND AMENDED COMPLAINT**

18.

Following plaintiff's speech as a union representative, Commander Crebs informed plaintiff that Crebs was taking away plaintiff's 6% hazard pay increase associated with his duties in the vice unit.  This reduced plaintiff's pay from 6% above top step to 3% above top step.  Crebs stated further that if plaintiff ever asked questions like he had in the roll call meeting, he would demote him from sergeant to detective and remove him from his supervisory role.

19.

On or around May 9, 2010, plaintiff traveled to Everett, Washington to attend a vigil for a missing girl related to a case plaintiff had been working on.  During his time in Everett, plaintiff spoke with the mother of the missing girl.  Plaintiff apologized to the mother, expressing his view that her daughter's case had been handled negligently by federal investigators and prosecutors and that they had conducted themselves poorly in relation to it.  Plaintiff's comments to the mother were overheard and later reported to the City by another officer present during the vigil.

20.

On or around May 12, 2010, Mayor Sam Adams fired Portland Police Chief Rosie Sizer and replaced her with current Police Chief Mike Reese who took over authority of the Bureau.

/////

/////

/////

Page 8 – **SECOND AMENDED COMPLAINT**

21.

On May 17, 2010, *Dan Rather Reports* aired its 517 episode.  The episode involved the sex trade and child sex trafficking in Portland, Oregon.  The show's description summarized the episode as a special report about the sex trade and sex trafficking, especially involving children and how Portland police feel understaffed and overwhelmed with the widespread crimes involving young girls being sold for sex.  The focus was on how Portland is becoming a major center for child trafficking and juveniles are being forced to sell their bodies. Plaintiff was the police officer to whom Dan Rather referred in the show's description.

22.

Soon thereafter, plaintiff learned that the Chief's office and the Mayor's office were very upset.  Plaintiff also learned, on the other hand, that Lt. Marshman said it was the best show he had seen dealing with human and child sex trafficking.

23.

In or around June 2010, plaintiff, in his capacity as interim Portland Police Association President, testified at an arbitration concerning an officer's grievance of the Bureau's practices related to overtime and backfill hours for officers.  This grievance, while instigated by a single officer, addressed an issue that affected many officers, the Bureau's operation as a whole and its contractual obligations with union members.  The arbitrator ruled against the Bureau on this matter.

/////

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

24.

In late July or early August 2010, the City, on the recommendation of Assistant Chief Hendricks, assigned plaintiff a new supervising officer, Lt. Rachel Andrew.  Shortly after learning of this, plaintiff feared Lt. Andrew would engage in a pattern of bullying, harassment, and baseless accusations in an attempt to have plaintiff removed from the vice unit.  And soon thereafter, in fact, Lt. Andrew started harassing and berating plaintiff.

25.

In or around the second week of August 2010, plaintiff began his volunteer work assisting in organizing and raising funds for the Western State Vice Investigators Association Conference, set for August 23-27, 2010.  The Association is a non-profit with 700 members from 23 states that presents training symposiums on topics including: the sex-slave industry, investigating human trafficking, investigating internet prostitution, investigating internet predators, investigating child prostitution and investigating child pornography.

26.

In or around the second week of July, plaintiff had approached Hendricks to inquire about Portland Police Bureau contributing funds since to the Conference the bureau was the main sponsor of the 2010 symposium.  Hendricks replied that PPB had no funds that could be used for that purpose.  Plaintiff learned that the Mayor's office may have funds available.  Plaintiff met with Mayor Adams and asked him to give a speech at the conference and asked about funds to sponsor the conference.  Mayor Adams agreed to speak and directed plaintiff to his Interim

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

Police Liaison Robin Springer to arrange $5,000 to sponsor the conference.  Plaintiff also put together a fundraiser, "a bunco game night," raising approximately $4,000 to contribute to the conference.

27.

On or around August 23, 2010, Mayor Adams, speaking to attendees of the Western States Vice Investigators Conference, thanked "Sergeant Doug Justus and his small team," and announced plans to "double" the number of officers in the PPB vice unit, and announced his plans to build a shelter for victims of human and child sex trafficking.

28.

On or around August 24, 2010, Lt. Andrew directed plaintiff to meet with her and Reese. Hendricks and Commander Famous were also present for this meeting.  Reese began by accusing plaintiff of going behind his back to the office of the Mayor in order to secure more officers in the vice unit.  Plaintiff denied this, stating that he did not go to the Mayor and make the request and that he was not aware of any plans to increase the number of vice officers until the announcement was made by the Mayor during his speech at the symposium.

/////

/////

/////

/////

29.

Page 11 – **SECOND AMENDED COMPLAINT**

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

During the same meeting on August 24, 2010, Lt. Andrew stated to Chief Reese that, because plaintiff had filed a union grievance related to hazard pay for vice unit officers, that Mayor Adams' proposed staffing increase would cost the Bureau much more than he might expect.  When Assistant Chief Hendricks learned that plaintiff had filed a grievance on this issue he appeared upset at plaintiff for having done so.

30.

Also during the August 24, 2010, Assistant Chief Hendricks and Commander Dave Famous instructed plaintiff to "keep them in the loop" concerning his interactions with the Mayor's office and his interactions with the vice unit.  Plaintiff agreed that he would.

31.

On or about August 25, 2010, the Mayor's office contacted plaintiff to arrange the attendance of some officers from the Conference at a lunch meeting with the Mayor and his staff. Plaintiff agreed to attend.  Plaintiff then contacted Hendricks , Famous and Andrew to inform them of the meeting with the Mayor.

32.

On or around August 26, 2010, Lt. Andrew approached plaintiff at the Conference and began yelling at and berating him in the presence of other officers, screaming at plaintiff "What the fuck are you thinking?"  Andrew accused plaintiff of failing to follow the chain of command in that he contacted Hendricks and Famous directly concerning the meeting with the Mayor, instead of working through Andrew, his supervising officer.  Plaintiff responded that he had been

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

asked by Hendricks and Famous to keep them apprised, and he did that.  Humiliated and

embarrassed, plaintiff ended the conversation and declined to engage in further conversation

with Andrew at that time because of her hostile attitude.

33.

About the end of August, plaintiff was contacted by Libby Spears, a producer for the

television show "*America's Most Wanted*" ("AMW").  Running for 23 years, *America's Most

Wanted* is the longest running program of its kind, and has as its goal and results the assistance

of law enforcement in the apprehension of criminals and fugitives.  .The show profiles missing

persons, especially children.  Producer Spears had learned, through Dan Rather Reports, about

plaintiff's human and child sex trafficking-related work, particularly the case of a missing child,

forced into prostitution, who testified against her pimp and thereafter went missing.  Spears

commented to plaintiff that she was interested in creating an episode of AMW centering on this

particular unsolved case that plaintiff had mentioned to Dan Rather.

34.

On or around August 26, 2010, plaintiff attended the lunch meeting called by Mayor

Adams.  The Mayor, his Interim Police Liasion Robin Springer, Lt. Andrew, and other officers

were present.  During this meeting, Lt. Andrew persisted in her continuing pattern of yelling at

and berating plaintiff for failing to follow the chain of command regarding contact with the

Mayor's office, and going to Hendricks and Famous directly concerning this meeting.

35.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On or around September 5, 2010, plaintiff met with Lt. Andrew and Libby Spears to discuss the schedule of filming.  During that meeting, plaintiff informed Lt. Andrew that the schedule included a trip to Everett, Washington, to interview the victim's family.

36.

On or around September 9, 2010, in preparation for a planned undercover operation targeting prostitution, plaintiff submitted an Operations Plan to Lt. Andrew detailing the personnel involved and the plan of action.

37.

On or around the night of September 9, 2010, plaintiff conducted the undercover mission, which was filmed by the ABC television show *Nightline*.  Just before the mission, plaintiff was approached by Lt. Andrew, at which time she falsely accused him of not informing her that *Nightline* would be filming the mission and falsely accused plaintiff of not filling out a proper Operation Plan.  Plaintiff had in fact informed her, had filled out the Operation Plan paperwork, and had received her approval for the mission.

/////

/////

/////

/////

/////

38.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On or about September 16, 2010, plaintiff, filmmaker and director Libby Spears, and her cameraman traveled to Everett, Washington, to interview the family of the trafficking victim that was to be the subject of the AMW episode.  Plaintiff had notified Sgt. Mike Geiger as well as all the officers in his unit, that he would be gone the entire day.  However, Lt. Andrew called plaintiff en route to Everett, harassing and falsely accusing him of skipping work and not notifying her that he would be in a different state.  Plaintiff reminded Lt. Andrew of their September 5, 2010, meeting, for which she had been present, when the trip was arranged and approved.

39.

On or about September 21, 2010, plaintiff spoke again to Libby Spears about matters of public safety and concern involving the missing child case and the child sex trafficking industry in Portland.  While plaintiff's interview was being filmed by AMW at Madison's Bar and Grill in Portland, when plaintiff was off duty, Lt. Andrew called plaintiff and again engaged in yelling and verbally berating him.  This time she was yelling at him regarding a prisoner pick up that plaintiff authorized, that had in fact been arranged and approved by Lt. Andrew.  After speaking with Lt. Andrew, plaintiff called Commander Famous and reported the events in his call with Lt. Andrew.

/////

/////

40.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On September 22, 2010, plaintiff met with Commander Famous to discuss Lt. Andrew's retaliatory, berating, embarrassing, and harassing behavior toward plaintiff.  Lt. Andrew tried, on at least three occasions, to interrupt this meeting but each time was ordered by Commander Famous to leave.  Plaintiff informed Famous that he would be out of the office for about 10 days for vacation.  Famous attempted to assuage plaintiff's concerns and replied that plaintiff should not worry about the matter, and that it would be taken care of when plaintiff returned.

41.

Soon after AMW September 21, 2010 interview of plaintiff, while Libby Spears and her film crew were still in Portland, the prosecutor's office somehow learned of the interview and was directed to review the film of plaintiff's interview.  The prosecutor's office staff met with Spears at a film location in Portland and reviewed the film.  No one from that office told Spears to delete, censor or edit anything plaintiff had stated, nor was there any indication of any concerns related to the interview containing speech that was unprofessional, harmful to any pending case, or in any way harmful to the public.

/////

/////

/////

/////

/////

42.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On or about September 23, 2010, Andrew wrote a memo to Commander Famous formally requesting an Internal Affairs investigation of plaintiff based on Andrew's allegations, contained in that memo, that plaintiff had been insubordinate, had failed to follow the chain of command on numerous occasions, and had failed to file the necessary paperwork in connection with the September 9, 2010 undercover operation.

43.

On or about October 5, 2010, upon returning from vacation the previous day, plaintiff met with Commander Famous, Lt. Mike Marshman, and his union representative Jim McCausland refarding accusations made by Lt. Andrew.  Commander Famous began by accusing plaintiff of having a drinking problem.   The problem was purportedly based upon Lt. Andrew' perceptions during the telephone call while she berated him at Madison's Bar and Grill, and her allegations that plaintiff was speaking fast while she yelled at him during his interview with AMW.  Commander Famous stated that he could get help if plaintiff had a drinking problem.  Plaintiff responded that he did not have a drinking problem, that there witnesses that who observed plaintiff at Madison's during the AMW interview, and that he wanted to resolve the issues of Lt. Andrew' continuing harassment and retaliation.

/////

/////

/////

44.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

During the same meeting on October 5, 2010, Commander Famous stated that his ability to resolve plaintiff's retaliation and harassment complaints of Lt. Andrew had been taken away from him.  Famous refused to listen to anything further that plaintiff attempted to say.

45.

On October 5, 2011, at the close of the meeting, Commander Famous told plaintiff he was being transferred to the Telephone Report Unit (TRU).  Plaintiff was demoted effective immediately to a unit widely viewed within the Bureau as a punitive demotion and transfer.

46.

On or about October 7, 2010, due to the overwhelming stress and continuing pattern of harassment, retaliation, and unbearable working conditions, plaintiff began having chest pains and was taken to the emergency room.  He was admitted to Legacy Hospital in Vancouver, Washington, and diagnosed with having a stress-induced panic attack.  Later that evening, Chief Mike Reese visited plaintiff and appeared to plaintiff to be very apologetic about recent events. Plaintiff stated to Reese his view that what was happening to him was unfair.  Reese replied that he was obliged to protect Lt. Andrew "because she was in a protected class."

/////

/////

/////

/////

47.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On or about November 14, 2010, Assistant Chief Hendricks called plaintiff to discuss the sex trafficking case that was the subject of the AMW episode plaintiff with which plaintiff was involved.  Plaintiff was to travel to Washington, D.C., the next day to meet with John Walsh, the host of the show, and to be interview and filmed concerning the case.  At the end of the phone conversation, Hendricks ordered plaintiff not to go to Washington, D.C.  Plaintiff pointed out to Hendricks that the prosecutor's office had reviewed the film produced by AMW on the case and concluded that nothing about the episode would have a negative impact on the Bureau's ongoing investigation.  Hendricks did not respond.

48.

On November 15, 2010, Lt. Mike Marshman called plaintiff and informed plaintiff that Hendricks had reversed his decision and was now ordering plaintiff to fly to Washington, D.C, because the top commanders at the Bureau were afraid of making Portland Police look bad to AMW by not showing up.  Marshman further informed plaintiff that he, Marshman, was ordered to accompany plaintiff to Washington, D.C., as a chaperone so that plaintiff "wouldn't say anything that would embarrass the Portland Police Bureau."

/////

/////

/////

/////

49.

Page 19 – **SECOND AMENDED COMPLAINT**

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On November 16, 2010, the host John Walsh said this had had happened only one other time in 25 years and was upset that plaintiff was ordered by City management not to speak out about the missing girl case, which was the point of the show.  Plaintiff was filmed the same day providing censored and circumspect speech on the matter, as ordered.

50.

On or about December 6, 2010, due to the ongoing harassment and unbearable working conditions, plaintiff sought a transfer to a position in the Drugs and Vice Division under Captain Micheal Leloff.  Plaintiff interviewed with Capt, Leloff .  Because Assistant Chief Hendricks had demoted plaintiff to the TRU, it was he who would have final authority on whether to give plaintiff the DVD position.  Plaintiff arranged to meet with Hendricks the following day at 4pm.

51.

Plaintiff was qualified for the open position in the Vice and Drugs Division.

52.

On or about December 7, 2010, plaintiff met with Hendricks to discuss the transfer to the DVD position.  Plaintiff stated that he was more than qualified for the position and it would reduce tensions because he would not be working with Andrew.

/////

/////

/////

53.

Page 20 – **SECOND AMENDED COMPLAINT**

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

During the December 7, 2010 meeting concerning the transfer, when plaintiff said he was qualified for the position, Hendricks responded by stating that plaintiff was the problem. Plaintiff replied that the accusations leveled against him by Andrew were false, that Internal Affairs had yet to interview him, and when they did, Hendricks would learn that Andrew had made false allegations including false statements that plaintiff was drunk at Madison's and had a drinking problem.  At this point Hendricks became angry and stated again that plaintiff was the problem.

54.

On December 7, 2010, during that meeting, Hendricks stated to plaintiff, "no matter what the I.A. investigation shows, you will be transferred to the central graveyard shift as a street sergeant where you will spend the rest of your career."

55.

 The street sergeant position, had plaintiff accepted, would have resulted in his suffering further monetary loss through a pay cut and significantly reduced monthly retirement pay and benefits for the remainder of his life.

56.

Shortly after the interview with Hendricks concluded, plaintiff received a call from Captain Mike Lee, who informed plaintiff that he should clean out his office immediately. Plaintiff complied.

57.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On or about December 15, 2010, Internal Affairs conducted an interview with plaintiff in connection with the allegations filed by Andrew in late September 2010.  At this time, plaintiff learned that the charges against him had been expanded to include an allegation involving abusing prescription drugs and not following the chain of command.

58.

In or about the second week of December 2010, around the same time as plaintiffs IA interview, began to believe his only alternative to end the harassment and retaliation was to resign.  Daryl Turner, the president of the Portland Police Association, informed plaintiff of his belief, based on experience and knowledge, that even if plaintiff were to accept a transfer to graveyard shift patrol duty the harassment and retaliation would continue.  Turner advised plaintiff that his only reasonable option was to resign.

59.

On or about January 6, 2011, plaintiff informed Lt. Chris Davis of Internal Affairs that he was considering resignation due to the ongoing harassment and retaliation.  Lt. Davis informed plaintiff that, should he resign, the Internal Affairs investigation against him would be closed.

/////

/////

/////

/////

60.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

Following the meeting in early December 2011 when plaintiff was told he would spend the remaining life of his career as an officer on a beat in Central Portland during graveyard, and given the stress, humiliation, continuing pattern of retaliation, lack of any indication from management that meaningful action would be taken to end the harassment and retaliation, as well as the likelihood that the graveyard shift patrol would expose him to more instances of dangerous working conditions, plaintiff and his wife decided to meet with the Retirement/Disability Board.

61.

On December 20, 2010, as a result of the above mentioned harassment and conditions, plaintiff and his wife met with the Retirement/Disability Board to inquire about retirement options and retirement funds.  At this time, plaintiff learned that, given the imminent demotion back to patrol, as well as cuts in hazard and on-call pay that had already happened, unless he retired by the end of January 2011 he would lose approximately $350.00 per month for the rest of his life.  Had he not been retaliated against and kept his job as a detective in Vice, and retired in June 2012 as he planned, he would have earned approximately an additional $1000/month for the rest of his life.

62.

On January 13, 2011, plaintiff retired and ended his 25 year career from the Portland Police Bureau due to unbearable and hostile working conditions as described above, including, but not limited to:

Page 23 – **SECOND AMENDED COMPLAINT**

(a)     Commander Crebs May 2010 threat of demoting plaintiff and taking away his supervisory duties, as alleged in paragraph 18;

(b)     Commander Crebs May 2010 statement to plaintiff that "[He] was going to get [plaintiff] for this", as alleged in paragraph 15;

(c)     plaintiff's demotion to TRU, widely viewed within the Bureau as a stigmatizing and punitive transfer, as alleged in paragraph 45;

(d)     Bureau management's ongoing pattern of accusing plaintiff of "embarrassing" the City when speaking out concerning the City's problems with sex crimes, human trafficking, and/or the City's response to these problems, as alleged in paragraphs 16 and 48;

(e)     Bureau management's pattern of ensuring that plaintiff was "chaperoned" at all times he was in a position to be speaking publicly concerning the City's problems with sex crimes, human trafficking, and/or the City's response to these problems, as alleged in paragraphs 16 and 48;

(f)     Andrew's ongoing pattern of yelling at and berating plaintiff, including Andrew's August 26 and September 9, 2010, berating of him in front of other officers, the September 16 and 21, 2010, berating of him in front of Libby Spears, as alleged in paragraphs 32, and 37-39;

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

(g)     Andrew's September 23, 2010 memo to Commander Famous instigating an
        Internal Affairs investigation against plaintiff based on baseless concerns as
        alleged in paragraph 42;

(h)     Hendricks' statement to plaintiff that, "no matter what the I.A. investigation
        shows, [he] will be transferred to the central graveyard shift as a street sergeant
        where [he] will spend the rest of [his] career," as alleged in paragraph 54;

(i)     Hendricks' refusal to transfer plaintiff to the open Drugs and Vice Division
        position, as alleged in paragraphs 53-54.

63.

In or about the first week of February 2011, plaintiff encountered Chief Mike Reese
outside the Bureau.  During their ensuing conversation, Reese informed plaintiff that he, Reese,
knew he was receiving "filtered information" about plaintiff from Hendricks and that, after the
IA investigation relative to Andrew was completed, Reese would issue a public apology to
plaintiff.

/////

/////

/////

/////

/////

64.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

On or about February 10, 2012, 13 months after his resignation, plaintiff received a letter from Interal Affairs indicating that, contrary to Lt. Chris Davis' assertion on January 6, 2011 that the investigation would end if plaintiff resigned, not only did the investigation continue, but that Internal Affairs was recommending a finding of "sustained" on five of the seven allegations against plaintiff.

65.

Plaintiff was also advised by the February 10, 2012, letter that a hearing had been scheduled for March 7, 2012, before the Police Review Board to review the allegations against plaintiff and recommend findings to the Chief of Police.  The continuation of the Internal Affairs investigation, culminating in the March 7, 2012, hearing represented an abuse of the City's power in that the clear language of the City Code gives the Police Review Board jurisdiction only over sworn officers currently employed by the Bureau.

66.

The City, in continuing the investigation of plaintiff in the face of a clear lack of jurisdiction to do so abused its authority and/or Chief Reese, in directing Internal Affairs to continue the investigation, was executing a policy which was an abuse of his authority as Chief of Police under City Code.

/////

/////

### FIRST CLAIM FOR RELIEF

Page 26 – **SECOND AMENDED COMPLAINT**

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

**AGAINST DEFENDANT CITY OF PORTLAND**

**(ORS 659A.203 – Public Employee Whistleblower Claim)**

67.

Plaintiff realleges and incorporates as though set forth herein paragraphs 1 through 66.

68.

Plaintiff's disclosure to his colleagues, superiors and members of the public of serious misconduct involving public officials and agencies were disclosures that plaintiff reasonably believed was evidence of a violations of law and/or mismanagement, and/or gross waste of funds, and/or abuse of authority, and/or a substantial and specific danger to public health and safety pursuant to ORS 659A.203 resulting from public action.   As such, his disclosures and speaking out on such matters as a whistleblower were protected activities.

69.

Plaintiff's disclosures of violations of law and/or mismanagement, and/or gross waste of funds, and/or abuse of authority, and/or a substantial and specific danger to public health and safety included, but were not necessarily limited to, disclosures of his good faith belief that the following state and federal laws had been violated:

a.  28 U.S.C. § 530B and 28 C.F.R. Part 77 (Ethical Obligations of Government Attorneys): in connection with the Office of the United States Attorney for the District of Oregon's handling of the missing girl case, requiring government attorneys to comply with state rules of professional conduct;

Page 27 – **SECOND AMENDED COMPLAINT**

b. Oregon Rules of Professional Conduct Rules 1.3 (Diligence), 3.3 (Candor to Tribunal), in connection with the United States Attorney and or state prosecutor's dilatoriness in prosecuting the case and in connection with their (mis)handling of evidence as presented to a grand jury;

c. 18 U.S.C. § 3521 (Witness Security Program), in connection with the U.S. Marshals Service's failure to adequately protect the victim after she gave testimony to the grand jury and later went missing;

d. 29 U.S.C. § 158 (Unfair Labor Practices), in connection with the City's elimination of hazard pay for certain detectives and sergeants.

70.

The City and Bureau retaliated as alleged above and treated plaintiff as insubordinate, as the problem, threatened discipline, threatened and implemented demotions/transfers, transferred plaintiff to less desirable job positions, interfered with plaintiff's ability to speak publicly about the same matters, subjected plaintiff to a continuing pattern of retaliation and harassment; subjected him to working conditions that caused a constructive termination given he had no reasonable alternative but to resign.

/////

/////

/////

71.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

The actions of the City, its agents and employees acting within the course and scope of their duties as set forth above and incorporated into this paragraph violated plaintiff's rights under ORS 659A.203.

72.

Plaintiff's protected activity was a substantial and motivating factor for the above described retaliatory actions and decisions made by the City.

73.

As a direct and proximate result of defendant's wrongful conduct, plaintiff has suffered economic damages and is entitled to an award of lost wages and benefits in an amount to be determined, plus prejudgment interest.

74.

Plaintiff is entitled to recover his reasonable attorney fees and costs pursuant to ORS 659A.885(a).

### SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANT CITY OF PORTLAND

### (ORS 659A.199 – Whistleblower Statute)

75.

Plaintiff realleges and incorporates as though set forth herein paragraphs 1 through 74.

/////

76.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

Defendant discriminated against plaintiff in the terms, conditions and/or privileges of employment due to plaintiff's good-faith reporting to his superiors of information that he believed was evidence of violations of a state law and/or City of Portland rules or regulations. As such, his disclosures and speaking out on such matters as a whistleblower were protected activities.

77.

Plaintiff's reporting of violations of state and/or federal law or regulations included, but was not necessarily limited to, disclosures of his good faith belief that the following state and federal laws had been violated:

a. 28 U.S.C. § 530B and 28 C.F.R. Part 77 (Ethical Obligations of Government Attorneys): in connection with the Office of the United States Attorney for the District of Oregon's handling of the missing girl case, requiring government attorneys to comply with state rules of professional conduct;

b. Oregon Rules of Professional Conduct Rules 1.3 (Diligence), 3.3 (Candor to Tribunal), in connection with the United States Attorney and or state prosecutor's dilatoriness in prosecuting the case and in connection with their (mis)handling of evidence as presented to a grand jury;

c. 18 U.S.C. § 3521 (Witness Security Program), in connection with the U.S. Marshals Service's failure to adequately protect the victim after she gave testimony to the grand jury and later went missing;

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

d.   29 U.S.C. § 158 (Unfair Labor Practices), in connection with the City's elimination of

hazard pay for certain detectives and sergeants;

e.   ORS Chapter 659A (Unlawful discrimination and harassment in employment), in

connection with harassment and retaliation he had experienced as a result of previous

disclosures on the above topics.

78.

The actions of the City, its agents and employees acting within the course and scope of

their duties as set forth above and incorporated into this paragraph violated plaintiff's rights

under ORS 659A.199.

79.

Plaintiff's protected activity was a substantial and motivating factor for the above

described retaliatory actions and decisions made by the City.

80.

As a direct and proximate result of defendant's wrongful conduct, plaintiff has suffered

economic damages and is entitled to an award of lost wages and benefits in an amount to be

determined, plus prejudgment interest.

81.

Plaintiff is entitled to recover his reasonable attorney fees and costs pursuant to ORS

659A.885(a).

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

**THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANT CITY OF PORTLAND**

**(ORS 659A.230 – Retaliation for Testifying in a Civil Proceeding)**

82.

Plaintiff realleges and incorporates as though set forth herein paragraphs 1 through 81.

83.

Defendant discriminated against plaintiff in the terms, conditions and/or privileges of employment due to plaintiff's good-faith testimony in an arbitration concerning unlawful overtime-related employment practices committed by defendant City of Portland.

84.

As a matter of law, an arbitration is a civil proceeding.

85.

The actions of the City, its agents and employees acting within the course and scope of their duties as set forth above and incorporated into this paragraph violated plaintiff's rights under ORS 659A.230.

86.

As a direct and proximate result of defendant's wrongful conduct, plaintiff has suffered economic damages and is entitled to an award of lost wages and benefits in an amount to be determined, plus prejudgment interest.

/////

Page 32 – **SECOND AMENDED COMPLAINT**

87.

Plaintiff is entitled to recover his reasonable attorney fees and costs pursuant to ORS
659A.885(a).

**FOURTH CLAIM FOR RELIEF**

**AGAINST DEFENDANT CITY OF PORTLAND**

**(Common Law – Wrongful Discharge)**

88.

Plaintiff realleges and incorporates as though set forth herein paragraphs 1 through 87.

89.

Defendant retaliated against and forced the resignation of plaintiff, thereby interfering
with an important societal obligation and/or forced plaintiff's resignation while he was pursuing
important rights related to his role as an employee, including, but not limited to, the following:

(a)     Exercising his duty as a public officer of the law to serve the important interest of
his community by speaking out on matters of public safety, allocation of
resources to prote4ct public welfare, and to better prevent child prostitution and
human trafficking crimes, and/or

(b)     Resisting discrimination and retaliation for utilizing the justice system as set forth
in the public policies discussed in Olsen v. Deschutes County, 204 Or. App. 7, 14-
17, 127 P.3d 655, 660-661 (2006) (wrongful discharge claim exists if legislature
states intention not to preclude additional claims), and the policies set forth in

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

ORS 659A.230(3), 659A.199(2) (whistleblower statute remedies are in addition to common law remedies or other available remedies); and/or

(c)     Exercising his duty as an officer pursuant to Bureau Directive 310.20 ("Retaliation Prohibited"), as set forth in the Police Bureau's *Manual of Policy and Procedure*, to promote a retaliation and harassment-free work environment; and/or

(d)     Opposing what plaintiff believed in good faith to be the unlawful denial of hazard pay for vice officers, thereby pursuing an important right related to his role as an employee; and/or

(e)     Cooperating and testifying as a witness concerning overtime and backfill issues in an arbitration proceeding pursuant to ORS 243.706, and was thereby exercising important functions which served an important public policy; and/or

(f)     Providing mutual aid and protection of fellow union members, as set forth in the National Labor Relations Act, 29 USC § 157.

90.

Plaintiff does not have available to him adequate remedies under his statutory claims for relief and as a result is entitled to such remedies as exceed those awarded under other claims.

/////

/////

/////

Page 34 – **SECOND AMENDED COMPLAINT**

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

91.

As a direct and proximate result of defendant's wrongful conduct, plaintiff has suffered

significant economic damages and is entitled to an award of his lost wages and benefits from the

date of his forced retirement until trial in an amount to be determined at trial, plus front pay and

prejudgment interest.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the court to:

1.      Assume jurisdiction over each of the causes set forth herein.

2.      A declaration that the City has violated plaintiff's constitutionally protected rights

and an order requiring defendant to correct this deficiency.

3.      Grant a permanent injunction enjoining defendant, its owners, officers,

management personnel, employees, agents, successors, and assigns, and all persons in active

concert or participation with defendant, from engaging in any employment practice which

retaliates against an employee on the basis of their exercising their right to free speech and

whistleblowing matters of public concern on such terms as the court may direct.

4.      Grant equitable relief including but not limited to an expungement of all negative

references to use or misuse of drinking, prescription medication and insubordination that may be

in his personnel files.

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

5.      Order defendant to create, implement and carry out policies, practices and programs providing for equal employment opportunities which affirmatively eradicate the effects of past and present unlawful employment practices, on such terms as the court may direct.

6.      Order defendant to make plaintiff whole by compensating plaintiff for past and future pecuniary losses, including expenses, impairment of earning capacity, lost past and future earnings and benefits of employment, and such other losses as are awarded by a jury or otherwise established at trial.

7.      Order defendant to pay plaintiff awards of compensatory damages for non-pecuniary losses, including physical and emotional injury, pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life in an amount to be determined by a jury.

8.      Order defendant to assess an award of punitive damages against the individual defendants in an amount to be determined by a jury.

9.      Award plaintiff his costs of suit and his reasonable attorney fees, costs and expert witness fees pursuant to ORS 659A.885.

10.     Order defendant to pay prejudgment and post judgment interest, as appropriate, on all amounts due to plaintiff as a result of this action.

/////

/////

/////

Page 36 – **SECOND AMENDED COMPLAINT**                    **Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

DATED:  6TH day of August, 2012

CHARESE ROHNY LAW OFFICE, LLC

By: _____

Charese A. Rohny, OSB 953964
Of Attorneys for Plaintiff

**Charese Rohny Law Office, LLC**
1515 SW 5th Avenue, Suite 1010
Portland, Oregon  97201
Telephone: 503.449.2291

## <u>CERTIFICATE OF SERVICE</u>

1

2      I hereby certify that I served the foregoing PLAINTIFF'S SECOND AMENDED
COMPLAINT on the following:

3

4      Jenifer Johnston                    Tamara E. Russell
       Deputy City Attorney               Barran Liebman LLP
5      City of Portland                   601 SW 2nd Avenue, Suite 2300
       1221 SW 4th Avenue, Room 430,      Portland, Oregon 97204
6      Portland, OR 97204                 *trussell@Barran.com*
7      *Jenifer.Johnston@portlandoregon.gov*   Attorney for Rachel Andrew
       Attorney for City of Portland

8

by the following indicated method(s):

9

10     _____By **faxing and mailing** full, true, and correct copies thereof by faxing to the attorney at
       the fax number as above stated, which is the last-known fax number for the attorney's office, on
11     the date set forth below; and by mailing in a sealed envelope with postage prepaid thereon,
       addressed as above stated, which is the last-known office address of the attorney, and deposited
12     with the United States Postal Service at Portland, Oregon, on the date set forth below.

13     _____By **mailing** full, true, and correct copies thereof in a sealed envelope with postage prepaid
14     thereon, addressed as above stated, which is the last-known office address of the attorney, and
       deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

15     _____By causing full, true and correct copies thereof to be **hand-delivered** to the attorney at the
16     address stated above, which is the last known address of attorney, on the date set forth below.

17     _XX_ By transmitting by **email** such document in PDF formatted document to the attorneys at
18     the email addresses as stated above, the last known email address for such person.

19

20     DATED this 6th day of August, 2012.

21          **CHARESE ROHNY LAW OFFICE, LLC**

22     By: _____

23          Charese A. Rohny, OSB 953964
            Of Attorneys for Plaintiff

24

25     **Page 1 –SECOND AMENDED COMPLAINT**

26                                        **CHARESE ROHNY LAW OFFICES**
                                          1515 SW 5th Avenue, Suite 1010
                                          Portland, Oregon  97204
                                          Telephone: 503.449.2291